**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| DAVID MCCOY | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | NO. 20-3286 |
| | : | |
| ANDREW M. SAUL | : | |
| | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                       **July 16, 2021**

An Administrative Law Judge evaluating a citizen's appeal from the Social Security Administration's denial of social security benefits must consider and assign a level of importance, or "weight," to the claimant's treating physician's diagnosis. She must do so in evaluating whether the claimant is disabled based on the entire record. An Administrative Law Judge who does not specifically assign a weight to the treating diagnosis or inartfully describes her thought process may otherwise detail the substantial evidence supporting her findings. This level of detail allows a reviewing court to determine whether the inartful or absent specific finding of allocated weight for a treating physical diagnosis is harmless error given the substantial evidence.

We referred a claimant's petition for review to Judge Rice for a report and recommendation as to whether we should remand the claim to allow the Administrative Law Judge to specifically describe the weight she applied to a treating physician's diagnosis before she found the claimant is not disabled. Judge Rice timely and thoughtfully recommended we affirm the Administrative Law Judge's findings of no disability based on substantial evidence. The claimant objects to Judge Rice's analysis. We agree with Judge Rice and overrule the objections. We agree the substantial evidence overcomes the Administrative Law Judge's inartful or absent description of the reasons she placed little weight on the treating physician's

diagnosis. This error is harmless given the overwhelming substantial evidence detailed by the Administrative Law Judge in denying disability benefits.

## I. Background

David A. McCoy visited the emergency room on August 23, 2015 after experiencing shortness of breath.[1] Doctors diagnosed him with congestive heart failure.[2] He left the hospital "against medical advice" and before doctors completed recommended testing.[3]

Mr. McCoy saw cardiologist Dr. Daniel Ratliff on August 28, 2015 following his hospitalization.[4] Dr. Ratliff diagnosed Mr. McCoy with New York Heart Association class II-III congestive heart failure, hypertension, obesity, diabetes mellitus, and tobacco abuse.[5] Dr. Ratliff ordered further testing including an echocardiogram, stress test, and assessment of thyroid function.[6] He recommended Mr. McCoy continue his current medication regimen and added heart failure prescription drugs.[7] He also recommended Mr. McCoy stop smoking and begin dieting and exercising to combat the obesity.[8] Dr. Ratliff scheduled Mr. McCoy to return on September 18, 2015.[9]

Dr. Ratliff diagnosed Mr. McCoy at his September 18, 2015 follow-up with New York Heart Association Class III congestive heart failure, hypertension, obesity, diabetes mellitus, tobacco abuse, and sinus tachycardia.[10] Dr. Ratliff suggested right and left heart catheterization, continued Mr. McCoy's Bumex regimen, added medications, and recommended a "life vest."[11] Dr. Ratliff also recommended diet changes, exercise, and smoking cessation.[12] Mr. McCoy underwent a cardiac catherization procedure after being admitted into the hospital on September 24, 2015, after which Dr. Ratliff diagnosed him with the American Society of Anesthesiologists Class II mild systemic disease.[13]

Mr. McCoy revisited various doctors and emergency rooms multiple times over the next three years.[14] Mr. McCoy revisited doctors on: February 12, 2016; May 5, 2016; June 8, 2016; June 10, 2016; July 22, 2016; August 3, 2016; November 8, 2016; December 19, 2016; November 7, 2017; November 16, 2017; December 11, 2017; December 18, 2017; December 19, 2017; January 29, 2018; March 20, 2018; April 2, 2018; June 4, 2018; July 7, 2018; and July 30, 2018.[15] During the June 10, 2016 appointment, Dr. Ratliff classified Mr. McCoy as "permanently disabled."[16] Another physician later diagnosed Mr. McCoy's congestive heart failure as New York Heart Association Class II.[17]

### Mr. McCoy applies for Social Security disability benefits.

Mr. McCoy applied for Social Security disability benefits on May 2, 2016.[18] He claimed disability from heart failure, diabetes, and headaches.[19] Mr. McCoy listed his disability onset date as September 1, 2015 and his last insured date as December 31, 2015.[20] The Social Security Administration denied Mr. McCoy's application on August 31, 2016 finding no disability because he "could have adjusted to other work" based on evidence presented.[21] Mr. McCoy requested a hearing in front of an Administrative Law Judge to reconsider the Social Security Administration's decision.[22]

Administrative Law Judge Deborah Foresman held a hearing on October 4, 2018.[23] During the hearing, Judge Foresman considered, detailed, and evaluated the entirety of each of Mr. McCoy's hospital visits, including Mr. McCoy's various diagnoses, his subjective complaints, and his exam results.[24]

Judge Foresman also considered Mr. McCoy's account of his condition and the testimony of vocational expert Denise Cordes. Mr. McCoy testified he suffers from carpal tunnel and tennis elbow.[25] He also gets headaches three to four times a week, does not go out in crowds, and

suffers from kidney problems, fatigue, sleep issues, head congestion, feet swelling, and frequent urination.[26] Mr. McCoy testified he does laundry, yard maintenance (driving a tractor), goes up and down two flights of steps, washes the deck, watches TV, and uses the computer.[27] He also visits his brother's house for dinner once a week.[28] Mr. McCoy also goes grocery and clothes shopping.[29]

Following Mr. McCoy's testimony, vocational expert Denise Cordes testified an individual with Mr. McCoy's age, education, and past-relevant work characteristics would be able to hold a job as his past instructor position, charge account clerk, order clerk, credit checker, ticket seller, an information clerk, a storage facility rental clerk.[30]

### *Administrative Law Judge Deborah Foresman's decision.*

Judge Foresman denied Mr. McCoy's appeal for disability benefits on January 11, 2019.[31] Judge Foresman found Mr. McCoy did not meet disability requirements within the meaning of the Social Security Act from September 1, 2015 through his date last insured December 31, 2015 because Mr. McCoy had the residual functional capacity to perform a limited range of sedentary work.[32]

Judge Foresman explained the five-step process to determine whether a claimant, like Mr. McCoy, has a disability.[33] First, she determines whether the claimant is engaged in substantial gainful work.[34] If the claimant is engaged in substantial gainful work activity, the claimant is not disabled.[35] Second, she considers "whether the claimant has a medically determinable impairment that is severe," meaning the impairment "significantly limits an individual's ability to perform basic work activities."[36] Third, she considers whether the claimant's impairments meet "or equal[] one of [the Social Security Administration's] listings in appendix one to subpart P of part 404 . . . and meets the duration requirements."[37] Fourth, she considers whether the

claimant has the residual functional capacity to perform the requirements of past relevant work experience.[38] She will not find the claimant disabled "if [the claimant] can still do [their] past relevant work."[39] Fifth, she considers the claimant's residual functional capacity, age, education, and work experience to see if the claimant can make an adjustment to other work.[40] She will not find the claimant disabled if the claimant can adjust to other work.[41]

Judge Foresman applied the five-step process and determined Mr. McCoy was not disabled. She first determined Mr. McCoy did not engage in substantial gainful activity during the period from his alleged onset date of September 1, 2015 through his date last insured, December 31, 2015.[42] She then considered his impairments through his date last insured. She found Mr. McCoy suffered from severe impairments including cardiomyopathy, obesity, diabetes mellitus, congestive heart failure, obstructive sleep apnea, and coronary artery disease.[43] But Judge Foresman held Mr. McCoy's impairment did not meet "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520 (d), 404.1525 and 404.1526)."[44]

Judge Foresman then assessed Mr. McCoy's residual functional capacity, using a two-step process.[45] First, she assessed whether "there is an underlying medically determinable physical or mental impairment" which "can be shown by medically acceptable clinical or laboratory diagnostic techniques" to account for Mr. McCoy's symptoms.[46] She then "evaluate[d] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations."[47] She considered Mr. McCoy's statements about his symptoms, whether these statements are "substantiated by objective medical evidence" and "other evidence in the record."[48] Applying this process, Judge

Foresman found Mr. McCoy had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with some limitations.[49]

Judge Foresman discussed Mr. McCoy's diagnosis of cardiomyopathy, obesity, diabetes mellitus, congestive heart failure, obstructive sleep apnea, and coronary artery disease to support the first step.[50] She found Mr. McCoy suffered from "class III congestive heart failure" before his catheterization, showing "non-ischemic cardiomyopathy with mild coronary disease" in September 2015.[51] She also found Mr. McCoy refused a sleep study and to quit smoking in October 2015 while still working.[52] Administrative Law Judge Foresman then recited Mr. McCoy's medical history from October 2015 to July 2018.[53] She found Mr. McCoy's impairments "could reasonably expect to cause some of [his] alleged symptoms,"[54] but also found Mr. McCoy's statements "concerning the intensity, persistence and limiting effects of these symptoms . . . not entirely consistent with the medical evidence and other evidence in the record."[55]

Judge Foresman cited Mr. McCoy's statements about his disabilities but found them inconsistent "with [his] daily activities or the objective medical evidence."[56] She found Mr. McCoy's level of activity "not congruent with his allegations" regarding his symptoms.[57] Judge Foresman further found Mr. McCoy's complaints of pain inconsistent with medical evidence because he never needed an assistive walking device and doctors consistently observed he had a "normal gait."[58] She also noted Mr. McCoy never presented with an immediate distress despite his diagnosis.[59] She noted doctors finding his lungs clear and his disregard of most medical advice given to him.[60] Judge Foresman found this evidence "diminishes the persuasiveness of [Mr. McCoy's] claim" because it "is not in line with [Mr. McCoy's] subjective allegations."[61]

Judge Foresman gave some weight to the restrictions found by Ms. Cortes, but gave significant weight to Ms. Cortes's finding Mr. McCoy can perform sedentary work because it is "mainly . . . consistent with the . . . record."[62] She gave some weight to the opinion of a consultative examiner who examined Mr. McCoy in January 2018, because the doctor relied on Mr. McCoy's subjective complaints.[63] The doctor diagnosed Mr. McCoy with "diabetes mellitus, cardiomyopathy, carpal tunnel syndrome and headaches."[64] Judge Foresman found the opinion "only somewhat consistent with the record as a whole" because many of the doctor's assertions did not have strong support "by his own documented examination of [Mr. McCoy]."[65]

Judge Foresman described Dr. Ratliff's June 2016 report of Mr. McCoy as "permanently disabled," but described his opinion as vague, conclusory, and gave it "little weight."[66] Judge Foresman supported her conclusion of offering little weight by reminding Mr. McCoy "the ultimate determination of disability is reserved to the Commissioner."[67] Judge Foresman concluded Mr. McCoy can perform sedentary work with additional restrictions imposed because the objective evidence did not support "the extent of the pain or symptoms [Mr. McCoy] has alleged."[68] Mr. McCoy appealed Administrative Law Judge Foresman's decision to the Social Security Administration's Appeals Council which issued a Notice of Denial on May 4, 2020.[69]

### *Judge Rice's Report and Recommendation.*

Mr. McCoy timely sought review of Judge Foresman's decision.[70] We referred his request for review to Judge Rice for a report and recommendation on July 9, 2020 consistent with our Court's standard protocols.[71] Mr. McCoy moved for summary judgment on March 24, 2021, arguing Judge Foresman erred in "fail[ing] to consider all medical opinions contained in the record."[72] Mr. McCoy argued Judge Foresman acknowledged but did not adequately consider "the severity and consequences of" Dr. Ratliff's diagnosis of New York Heart Association Class

III congestive heart failure on September 18, 2015.[73] Mr. McCoy argued his New York Heart Association Class III rating is inconsistent with Judge Foresman's residual functional capacity finding, which indicates Mr. McCoy "could sit for four hours at a time, stand for three hours of eight hours and one hour at a time, and walk for two hours of eight hours and thirty minutes at one time," because these "abilities exceed the capacity of a person whose condition causes fatigue, palpitation, dyspnea, or anginal pain with 'less than ordinary activity.'"[74] Mr. McCoy also challenged Judge Foresman's rejection of Dr. Ratliff's classification of Mr. McCoy as "permanently disabled," arguing Judge Foresman should still consider his opinion although the classification is reserved to the Commissioner.[75]

Judge Rice analyzed the claims and recommended we deny Mr. McCoy's request for review.[76] Judge Rice explained, "[Administrative Law Judges] are required to consider and assign weight to each medical source opinion."[77] He explained Administrative Law Judges "must consider specific factors when weighing medical opinions, like the length of the treating relationship, the support provided for the opinion, and the opinion's consistency with the overall record."[78] They must also "provide enough explanation that a reviewing court can determine 'if significant probative evidence was not credited or simply ignored.'"[79] Judge Rice further explained Administrative Law Judges must "give controlling weight to uncontradicted, well-supported opinions of treating physicians" under the "treating physician rule."[80]

Judge Rice then addressed Judge Foresman's treatment of Dr. Ratliff's September 18, 2015 diagnosis of Mr. McCoy as suffering from New York Heart Association Class III congestive heart failure.[81] Judge Rice explained, "[Judge Foresman] acknowledged this diagnosis, but did not assign it any particular weight or assess the medical opinion regulatory factors while addressing it."[82] Judge Rice recognized, "an [Administrative Law Judge's] failure

to address a medical opinion can require remand" but explained such a failure "may constitute harmless error if the [Administrative Law Judge] provided sufficient explanation to allow courts to determine whether evidence was discredited or 'simply ignored.'"[83]

Judge Rice then held, "[a]ny error [by Judge Foresman] is harmless" because Judge Foresman supported her conclusion with "substantial evidence."[84] Judge Rice cited our Court of Appeals' decision in *Pintal v. Commissioner of Social Security* and Judge Rufe's decision in *Reed v. Berryhill*.[85]

In *Pintal v. Commissioner of Social Security*, our Court of Appeals reviewed an Administrative Law Judge's determination a claimant did not have a disability under the Social Security Act notwithstanding his bipolar disorder, sleeping disorder, eating disorder, Hodgkin's lymphoma, and depression.[86] The Administrative Law Judge found the claimant's alcohol use contributed to his claimed disability.[87] The claimant argued the Administrative Law Judge erred in reaching this conclusion because "she impermissibly ignored medical opinion evidence."[88] The claimant specifically argued the Administrative Law Judge failed to consider a treating physician's opinion it was "difficult to tease out whether [the claimant's] symptoms [were] the cause or effect of alcohol."[89] Calling the claimant's argument "meritless," our Court of Appeals explained, "an [Administrative Law Judge is not required to cite every piece of relevant evidence in the record."[90] It further explained, "the record indicates that the [Administrative Law Judge] did consider [the doctor's] opinion, even if she did not specifically refer to it: the [Administrative Law Judge] discussed [the claimant's] hospitalization and cited the exhibit containing [the doctor's report]; the [Administrative Law Judge] noted [the claimant's] complaints that appeared on [the doctor's] discharge summary report; and the [Administrative Law Judge] noted different

diagnoses that were issued by the emergency department provider and reviewed by [the doctor]."[91]

In *Reed v. Berryhill*, a claimant sought review of an Administrative Law Judge's finding the claimant retained the residual functional capacity to perform sedentary work with certain limitations despite his spine disorder, chronic heart failure, chronic kidney disease, diabetes mellitus, and obesity, as well as an affective disorder.[92] The claimant argued the Administrative Law Judge should have discussed and weighed a treating physician's New York Heart Association assessments as medical opinions.[93] Judge Rufe agreed the treating physician's New York Heart Association assessments constituted medical opinions, and the Administrative Law Judge should have considered and weighed them as such.[94] But Judge Rufe nevertheless upheld the Administrative Law Judge's decision because "substantial evidence support[ed] the [Administrative Law Judge's] decision."[95] Judge Rufe explained, "the [Administrative Law Judge] fully discussed [the claimant's] cardiac care, including his treatment with the cardiologists on dates that correspond to the . . . [New York Heart Association's] class symptoms."[96]

Judge Rice found Mr. McCoy's challenges similar to those presented in *Pintal* and *Reed.* Like in *Pintal* where the record demonstrated the Administrative Law Judge considered the medical source opinion though she did not specifically refer to it, the record here shows Judge Foresman considered Dr. Ratliff's opinion. As Judge Rice pointed out, Judge Foresman explained Dr. Ratliff diagnosed Mr. McCoy with "class three heart failure."[97] Judge Foresman further described Dr. Ratliff's findings from the day in detail, describing how Dr. Ratliff noted Mr. McCoy's history of congestive heart failure and diabetes, weighed and measured Mr. McCoy, and reviewed Mr. McCoy's earlier tests.[98] Judge Foresman also noted Dr. Ratliff's

recommendations to quit smoking, improve his diet, begin exercising, and undergo a cardiac catherization.

Like in *Reed*, where Judge Rufe found the Administrative Law Judge "fully discussed Plaintiff's cardiac care, including his treatment with the cardiologists on dates that correspond to the [New York Heart Association] class symptoms," Judge Rice noted Judge Foresman accurately described Dr. Ratliff's assessment of Mr. McCoy on September 18, 2015 and explicitly mentioned his "class three hear failure."[99] Judge Rice found Judge Foresman adequately explained and described Dr. Ratliff's findings and "summarized the record of McCoy's cardiac catheterization, which shows he underwent the procedure noting Class III heart failure diagnosis but . . . the procedure revealed mild cardiac disease and pulmonary hypertension."[100] Judge Rice also considered Judge Foresman's analysis of Dr. Ratliff's opinion Mr. McCoy qualified as "permanently disabled" and why she gave it little weight.[101]

Judge Rice held Judge Foresman's description of the record in great detail led to the well-supported conclusion Mr. McCoy's reported symptoms and their severity showed inconsistency with his medical record "because his allegations of extensive functional impairment were inconsistent with both the medical evidence and his reported activities," while also refusing to follow medical advice.[102] Judge Rice also considered Dr. Ratliff's diagnosis of New York Heart Association Class III digressed to Class II by June 2018.[103] Judge Rice concluded Administrative Law Judge Foresman "reviewed Dr. Ratliff's classifications and other observations from September 18, 2015" and "explained why she did not treat McCoy's cardiac condition as fully disabling."[104] Judge Rice held "this opinion provides substantial evidence to support its analysis of Dr. Ratliff's opinions and substantial evidence to support denying benefits."[105]

## II.    Analysis

Mr. McCoy objects to Judge Rice's detailed report. He argues Judge Foresman's evaluation of Mr. McCoy's subjective complaints or credibility *may* have been different had she appropriately considered and weighed Dr. Ratliff's diagnosis of New York Heart Association class III congestive heart failure.[106] We overrule Mr. McCoy's objection. We agree with Judge Rice's finding Judge Foresman supported her decision with "substantial evidence" and thus any failure to weigh or consider Dr. Ratliff's diagnosis constitutes harmless error.

We conduct a *de novo* review of Mr. McCoy's objections to Judge Rice's Report.[107] We "may accept, reject, or modify in whole or in part, the findings or recommendations made" by Judge Rice.[108] Our review of Judge Foresman's findings are deferential and her findings of fact are conclusive if substantial evidence supports them.[109] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[110] "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'"[111] Evidence in the record supporting a contrary conclusion "does not undermine the Commissioner's decision so long as the record provides substantial support for [their] decision."[112] "We review the record as a whole to determine whether substantial evidence supports a factual finding."[113] We are bound by Administrative Law Judge Foresman's factual findings if her findings are supported by substantial evidence.[114]

Section 416.927 of the Code of Federal Regulations governs how an Administrative Law Judge should evaluate medical opinions in Social Security disability benefits claims filed before March 27, 2017.[115] Under the Code, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis, what [a claimant] can still do despite

impairment(s), and [a claimant's] physical and mental restrictions."[116] An Administrative Law Judge must "consider the medical opinions in a [claimant's] case record together with the rest of the relevant evidence" submitted.[117]

An Administrative Law Judge must also "weigh medical opinions" in accord with federal regulations.[118] An Administrative Law Judge evaluates the weight she gives to a medical opinion depending on whether the medical opinion comes from a "treating source."[119] A medical opinion is considered a "treating source medical opinion" where the medical professional offering the opinion "provides . . . or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."[120] If an Administrative Law Judge finds a "treating source's medical opinion on . . . the nature and severity of [the claimant's] impairment(s) . . . well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the claimant's] case," the Administrative Law Judge should give the treating source opinion "controlling weight."[121] "If . . . the treating physician's opinion conflicts with other medical evidence, then the [Administrative Law Judge] is free to give that opinion less than controlling weight or even reject it, so long as the [Administrative Law Judge] clearly explains her reasons and makes a clear record."[122] If the Administrative Law Judge determines the treating source opinion is not entitled to "controlling weight," the Administrative Law Judge should consider the following factors: (1) whether the physician examined the claimant; (2) whether the physician treated the claimant; (3) the length and frequency of the examination; and (4) the nature and extent of the treatment relationship.[123]

As Judge Rice correctly explained, "[Judge Foresman] acknowledged" Dr. Ratliff's September 18, 2015 diagnosis of Class III congestive heart failure, but "did not assign it any

particular weight."[124] While Judge Foresman cited Dr. Ratliff's diagnosis of Class III congestive heart failure, Judge Foresman did not explicitly explain whether she found Dr. Ratliff's opinion entitled to "controlling weight." Nor did she explicitly analyze the factors outlined in the statute and assign it a weight.

Although Judge Rice found Judge Foresman did not address the weight she assigned Dr. Ratliff's opinion, Judge Rice nevertheless recommended we deny Mr. McCoy's request for review because Judge Foresman provided "substantial evidence to support its analysis of Dr. Ratliff's opinions and substantial evidence to support denying benefits."[125] Mr. McCoy argues this error is not harmless but cites no supporting authority. We find, as Judge Rice did, Judge Foresman provided sufficient detail to allow meaningful judicial review and substantial evidence supported her decision.

"Where the [Administrative Law Judge's] decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless."[126] Judge Foresman supported her decision with substantial evidence. Judge Foresman went to great lengths to discuss all aspects of not only Dr. Ratliff's diagnosis of Mr. McCoy's heart failure, but also his medical record over a more than two-year period. As Judge Rice describes, Judge Foresman described Dr. Ratliff's appointment from the day of the diagnosis in detail, including Dr. Ratliff measuring him, weighing him, reviewing his previous tests, and noting "McCoy's history of congestive heart failure and diabetes."[127] Judge Foresman describes Dr. Ratliff's recommendation including quitting smoking, improving his diet and exercise, taking medication, and undergoing a catheterization.[128]

Judge Foresman summarizes in detail Mr. McCoy's medical appointments and emergency room visits from September 18, 2015 to July 30, 2018 throughout the remainder of her opinion.[129] Judge Foresman also describes Mr. McCoy's catherization six days after the first appointment with Dr. Ratliff revealing "non-ischemic cardiomyopathy with mild coronary disease."[130]

While Mr. McCoy argues "the findings of Mr. McCoy's catheterization do not erase Ratliff's finding of Class III heart failure" and Judge Foresman should have reconciled this evidence,[131] we find Judge Foresman did reconcile this evidence. She describes Mr. McCoy's medical history in extensive detail.[132] Judge Rice does not insinuate the findings of the catheterization erase the Class III heart failure diagnosis but shows Judge Foresman considered and described Dr. Ratliff's assessment.

Judge Foresman continues into early October of 2015, listing Mr. McCoy's doctor's recommendations, Mr. McCoy's failure to comply with these recommendations, and his life activities.[133] Judge Foresman then looks to February 12, 2016, when doctors diagnosed Mr. McCoy with congestive heart failure, obesity, diabetes mellitus, and coronary disease.[134] She describes how he acted during the exam and the resulting prescriptions.[135] She also listed objective medical evidence found during the course of the exam, including his lungs were clear, he had normal gait, mobility, and range of motion.[136] She then turns to June 2016 determining Mr. McCoy's history, his subjective complaints, and his continued disregard of medical recommendations and refusal to comply with further recommendations.[137] Judge Foresman again described in detail how he acted during this appointment, what medication he took during this period, what medication he stopped taking during this period, his various diagnosis at a variety of different appointments, and again his range of motion and strength.[138]

Judge Foresman describes these appointments revealing much of the same diagnosis and test findings up until November 7, 2017 when Mr. McCoy reported to an emergency room after referral from a cardiologist.[139] Judge Foresman offers great detail as to Mr. McCoy's treatment, including test results and Mr. McCoy's decision to leave the hospital early.[140] Judge Foresman then continues to describe in depth Mr. McCoy's follow-up appointments from the hospital visit, describing the doctor's findings and different diagnosis throughout December and January.[141] Judge Foresman then turns to Mr. McCoy's visits in March, April, June, and July 2018, describing Mr. McCoy's continuing diagnoses of artery disease and congestive heart failure. But she also describes Mr. McCoy's continued disregard of medical recommendations.[142]

Following Judge Foresman's summary of Mr. McCoy's various medical appointments, she described the inconsistencies between Mr. McCoy's medical evidence and his alleged symptoms.[143] Judge Foresman described Mr. McCoy's ability to partake in yard work, drive a tractor, do laundry, navigate steps, wash his deck, use a computer, watch television, shop for groceries and clothes, drive, care for himself, attend weekly dinners, prepare meals for himself, and pay his own bills and handle his finances. Judge Foresman noted Mr. McCoy never used a walking device, has a normal gait, has a normal range of motion, has normal strength, has never been found to be in distress when presenting, and has no lung issues. He also rarely follows medical advice.

Based on her review of the evidence presented, Judge Foresman found Mr. McCoy's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but not all of them.[144] Her opinion provides more than substantial evidence to allow us to (1) discern the basis of her reasoning and (2) defer to her analysis. As Judge Foresman

provides substantial evidence in support of her decision, we agree with Judge Rice any error in failing to assign a weight to Dr. Ratliff's diagnosis is harmless.

## III.    Conclusion

Judge Foresman provided substantial evidence in support of her decision. We adopt Judge Rice's Report and Recommendation and overrule Mr. McCoy's objections.

---

[1] ECF Doc. No. 16-2 at 51.

[2] *Id.*

[3] ECF Doc. No. 20 at 2; ECF Doc. No. 16-8 at 7.

[4] ECF Doc. No. 16-9 at 28.

[5] *Id.* at 30-31.

[6] *Id.* at 31.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] ECF Doc. No. 16-7 at 27.

[11] *Id.*

[12] *Id*

[13] *Id.* at 36.

[14] ECF Doc. 16-2 at 20-25.

[15] *Id.*

[16] ECF Doc. No. 16-12 at 38.

[17] ECF Doc. No. 16-14 at 25.

[18] ECF Doc. No. 16-5.

[19] ECF Doc. No. 16-4 at 2.

[20] ECF Doc. No. 16-2 at 18; *see* ECF Doc. No. 20 at n.1 ("To qualify for [disability insurance benefits] claimants must establish their disability began before their [date last insured].") (citing 20 C.F.R. §§ 404.130, 404.132; *Jakubowski v. Comm'r of Soc. Sec.*, 215 F. App'x 104, 105 (3d Cir. 2007); *De Nafo v. Finch*, 436 F.2d 737, 739 (3d Cir. 1971)).

[21] ECF Doc. No. 16-4 at 2.

[22] *Id.* at 7.

[23] ECF Doc. No. 16-2 at 33.

[24] *Id.*

[25] *Id.* at 59-60.

[26] *Id.* at 69-73.

[27] *Id.* at 61-63.

[28] *Id.* at 64-65.

[29] *Id.* at 66.

[30] *Id.* at 75-82.

[31] ECF Doc. No. 16-2.

[32] *Id.* at 18-20.

[33] 20 C.F.R. § 416.920(a).

[34] *Id.* § 416.920(a)(4)(i).

[35] *Id.*

[36] *Id.* § 416.920(a)(ii).

[37] *Id.* § 416.920(a)(iii).

[38] *Id.* § 416.920(a)(iv).

[39] *Id.* § 416.920(a)(iv).

[40] *Id.* § 416.920(a)(v).

[41] *Id.*

[42] ECF Doc. No. 18-19.

[43] ECF Doc. No. 16-2 at 19.

[44] *Id.* at 20.

[45] *Id.* at 20.

[46] *Id.*

[47] *Id.*; SSR No. 16-3p (C.E. 2016).

[48] *Id.*

[49] *See* ECF Doc. No. 16-2 at 20.

[50] *See id.* at 20-25.

[51] *Id.* at 21.

[52] *Id.*

[53] *Id.* at 21-23.

[54] *Id.* at 23.

[55] *Id.*

[56] *Id.*

[57] *Id.* at 24.

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.* at 25.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.* at 2.

[70] ECF Doc. No. 1.

[71] ECF Doc. No. 8.

[72] ECF Doc. No. 17-1.

[73] *Id.* at 5.

[74] *Id.*

[75] *Id.*

[76] ECF Doc. No. 20.

[77] *Id.* at 4.

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.* at 5.

[85] *Id.*

[86] 602 Fed. App'x 84, 85 (3d Cir. 2015).

[87] *Id.*

[88] *Id.* at 87.

[89] *Id.*

[90] *Id.* at 88.

[91] *Id.*

[92] 337 F. Supp. 3d 525, 527 (E.D. Pa. 2018).

[93] *Id.*

[94] *Id.* at 528.

[95] *Id.* at 529.

[96] *Id.*

[97] ECF Doc. No. 20 at 4 (citing ECF Doc. No. 16-2 at 21).

[98] *Id.* (citing ECF Doc. No. 16-2 at 21).

[99] *Id.* at 6.

[100] *Id.*

[101] *Id.* at 6.

[102] *Id.* at 7.

[103] *Id.*

[104] *Id.* at 8.

[105] *Id.*

[106] *See* ECF Doc. No 21.

[107] 28 U.S.C. § 636(b)(1)(C).

[108] *Id.*

[109] *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

[110] *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[111] *Id.*

[112] *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

[113] *Zirnsak*, 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)).

[114] *Sen Trinh v. Astrue*, 900 F. Supp. 2d 515, 518 (E.D. Pa. 2012) (citing *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001)).

[115] 20 C.F.R. § 416.927.

[116] *Id.* § 416.927(a)(1).

[117] *Id.* § 416.927(b).

[118] *Id.* § 416.927(c).

[119] *Id.*

[120] *Id.* § 416.927(a)(2).

[121] *Id.* § 416.927(c)(2).

[122] *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 148 (3d Cir. 2007).

[123] 20 C.F.R. § 416.927(c)(1)-(2)(i)-(ii).

[124] ECF Doc. No. 20 at 4.

[125] *Id.* at 8.

[126] *Richards v. Colvin*, 223 F. Supp. 3d 296, 304 (M.D. Pa. 2016).

[127] ECF Doc. No. 20 at 5 (citing ECF Doc. No. 16-2 at 21).

[128] *Id.* at 6.

[129] ECF Doc. No 16-2 at 20-25.

[130] *Id.* at 21.

[131] ECF Doc. No. 21 at 3.

[132] ECF Doc. No. 16-2 at 20-25.

[133] *Id.*

[134] *Id.*

[135] *Id.*

[136] *Id.*

[137] *Id.*

[138] *Id.* at 22.

[139] *Id.*

[140] *Id.*

[141] Mr. McCoy's doctor diagnosed him on November 16, 2017 with congestive heart failure, diabetes mellitus, tobacco abuse, and coronary artery disease. Mr. McCoy's doctor diagnosed him on December 11, 2017 with congestive heart failure, coronary artery disease, tobacco abuse and cardiomyopathy. Mr. McCoy's podiatrist diagnosed him on December 18, 2017 with athlete's foot and diabetes mellitus. *Id.* at 23.

[142] *Id.*

[143] *Id.*

[144] *Id.*